❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. 21-847M(NJ) |
| Devices A-E, more fully described in ) | |
| Attachment A, and located at 2620 West ) | |
| Wisconsin Avenue, Milwaukee, Wisconsin ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____April 1, 2021_____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     March 19, 2021 @ 2:42 p.m.          *[signature]*
                                                                                    *Judge's signature*

City and state:     Milwaukee, WI          Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                          *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

1.      The property to be searched is described as follows:

        a.      Apple watch, series 3, black in color, hereinafter referred to as "**Device A**";

        b.      Apple iPhone 11, black in color, hereinafter referred to as "**Device B**";

        c.      Sprint, Kyocera, model E4233, cell phone, serial number V65E4233, hereinafter referred to as "**Device C**";

        d.      Sprint, Duramax, flip phone, black in color, hereinafter referred to as "**Device D**"; and

        e.      A black in color tablet, hereinafter referred to as "**Device E**."

2.      **Devices A**, **B**, **C**, **D**, and **E**, collectively the "**Devices**," are currently located at 2620 West Wisconsin Avenue, Milwaukee, Wisconsin.

This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

1

# ATTACHMENT B

1. All records on the **Devices** described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(a)(1), 922(g)(3), 924(a), 924(c); and Title 21, United States Code, Section 841(a)(1), and involve Dashavon Williams, including, but not limited to:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of firearms and drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of firearms and drugs and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records;

   f. Photographs and/or videos depicting possesson of drugs or firearms;

   g. Any evidence related to either the ownership, purchase, or possession of drugs or firearms; and

   h. Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2. Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Devices A-E, more fully described in Attachment A,<br>and located at 2620 West Wisconsin Avenue,<br>Milwaukee, Wisconsin | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    21-847M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the    Eastern    District of    Wisconsin   , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(a)(1),<br>922(g)(3), 924(a), 924(c);<br>21 U.S.C. § 841(a)(1) | Dealing firearms without a federal firearms license; possession of a firearm by an<br>unlawful user of controlled substances; possession of a firearm in furtherance of a<br>drug trafficking crime; possession with intent to distribute controlled substances |

The application is based on these facts:

See affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael Poltorak, FBI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone *(specify reliable electronic means)*.

Date: March 19, 2021

_____
*Judge's signature*

City and state: Milwaukee, WI

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Michael Poltorak being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I, Michael Poltorak, am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since January 2020. Since September 2020, I have been assigned to the FBI Milwaukee Headquarters Office where I have been detailed to the Milwaukee Area Safe Streets Task Force (MASSTF). Prior to being employed as a Special Agent with the FBI, I was employed as a Police Officer with the Chicago Police Department from December 2017 to January 2020. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

3.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons.  I have in the course of

1

my experience as a Special Agent and law enforcement officer arrested numerous individuals for firearms related offenses including Possession of Weapon by Prohibited Persons and Possession of a Firearm in Furtherance of Drug Trafficking. I have worked with local, state, and federal law enforcement agents investigating the illegal possession of weapons in the Milwaukee area. I have also participated in the execution of numerous search warrants in which weapons were seized, and I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes. Additionally, I have conducted investigations involving the intentional transfer of a firearm from a non-prohibited person to a prohibited person. I am professionally trained in the use of firearms.

4.      I have also participated in the investigation of narcotics-related offenses, which have resulted in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity.  Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers.  Through my training and experience, I have become aware of the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.  I am also familiar with the actions, habits, traits, methods, and terminology used by drug traffickers and abusers of controlled substances.  More specifically, I am familiar with the street names of various drugs, including

2

marijuana, heroin, cocaine, and cocaine base. I am familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in the State of Wisconsin and elsewhere.

5. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

6. I have participated in several narcotics and firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. On many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

7. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers

3

during the course of their official duties, all of whom I believe to be truthful and reliable.

8.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9.      The property to be searched is described as follows:

       a.      Apple watch, series 3, black in color, hereinafter referred to as "**Device A**";

       b.      Apple iPhone 11, black in color, hereinafter referred to as "**Device B**";

       c.      Sprint, Kyocera, model E4233, cell phone, serial number V65E4233, hereinafter referred to as "**Device C**";

       d.      Sprint, Duramax, flip phone, black in color, hereinafter referred to as "**Device D**"; and

       e.      A black in color tablet, hereinafter referred to as "**Device E**."

10.     **Devices A**, **B**, **C**, **D**, and **E**, collectively the "**Devices**," are currently located at 2620 West Wisconsin Avenue, Milwaukee, Wisconsin.

11.     The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data more particularly described in Attachment B.

4

## PROBABLE CAUSE

12.     On February 21, 2020, law enforcement observed a drug transaction in the Walgreens parking lot, located at 3522 W. Wisconsin Avenue in Milwaukee. Law enforcement observed an individual enter the rear passenger seat of a red Dodge Avenger and conduct a hand-to-hand transaction with the driver, later identified as Kevonte Edwards-Johnson.  Law enforcement also observed the front seat passenger, later identified as Dashavon Williams, remove a firearm from his front pocket and place it under the front passenger seat.  Milwaukee police officers attempted to stop the vehicle, but the vehicle fled the parking lot and almost hit an officer.

13.     Officers pursued the vehicle and saw the vehicle dump the back seat passenger who received the drugs on the side of the road.  Officers stopped the vehicle at 4200 W. Highland Boulevard and arrested Kevonte Edwards-Johnson and Dashavon Williams.  Edwards-Johnson had a loaded Smith and Wesson 9mm firearm and $1,033.22 on his person.  Williams told officers that he put his firearm under the passenger seat.  Both Edwards-Johnson and Williams told officers that they did not have CCW permits.  Officers searched the vehicle and found a loaded Glock, model 26, 9mm pistol, bearing serial number NNB118, under the passenger seat, two small baggies of marijuana in the center console, and a large bag of marijuana in the backseat.  A total of 280.23 grams of marijuana was found.

14.     Officers located **Device A** on the person of Dashavon Williams during his arrest. Officers located **Device B** and **Device C** in the red Dodge Avenger.

15.     After being advised of his constitutional rights, Williams admitted that he had a Glock firearm in his pocket that day and placed it under the passenger seat. He stated that he has his gun for protection. Williams denied knowing anything about the drug deal that was going on in the vehicle and further denied having any drugs in the vehicle. Williams said that he was just getting a ride from Edwards-Johnson to pick up his vehicle from a tow lot. Williams stated that he lived at 6230 W. Chambers Street, smoked marijuana every day for the last two years, and had four firearms in his residence. Williams stated that he had an AR-15, an AK-Drako, a Glock, and an H&K. Williams identified **Device B** as belonging to him and denied consent to search **Devices A**, **B**, and **C**.

16.     After being advised of his constitutional rights, Edwards-Johnson stated that he sells "CBD" and all the drugs in the vehicle were "CBD."

17.     Officers went to Williams's residence, located at 6230 W. Chambers Street, and spoke with P.W.  P.W. gave officers written consent to search the residence.  In the living room, officers found two baggies containing a total of 25.32 grams of marijuana, a baggie containing 2.11 grams of marijuana, some ammunition and gun parts, a marijuana grinder, and a bill of sale for a Glock firearm.  In the hall closets, officers found loaded magazines, numerous rounds of ammunition, and gun holsters.  In the bathroom, officers found 2.3 grams of

6

marijuana. In the kitchen, officers found a small amount of marijuana, a holster, ammunition, and a rifle case.

18. In the master bedroom, officers found: a flip phone in the top dresser drawer, **Device D**; a tablet in the center dresser drawer, **Device E**; 21.46 grams of marijuana in two clear plastic baggies in a dresser drawer; 4 firearms in a closet: an Anderson Manufacturing, model AM-15, rifle; a Romarm/Cugir, model Mini Draco, 7.62x39, rifle; a Glock, model Gen 4, .40 caliber pistol, with an extended magazine; a DPMS Inc., model A-15, rifle; over 200 rounds of ammunition; and numerous gun magazines and parts.

19. After being advised of her constitutional rights, P.W. stated that she lives in the residence with Williams and their son, and she smokes marijuana every day. P.W. stated that she gets marijuana from Williams and that knew Williams sold marijuana.

20. Officers spoke to Williams a second time later that same day. Williams admitted that he has been selling guns for the past two years. Williams stated that he bought guns for cheap and sold them for more money. Williams further admitted that he has traded five firearms to Mexicans on the south side for marijuana. Williams said he traded two AR-15 style rifles, a shotgun, a 1911 handgun, and another gun for three or four pounds of marijuana. Williams then sold the marijuana to family and friends.

7

21.     On February 24, 2020, Williams' vehicle, which was in a tow lot, was searched pursuant to Williams' consent. Located within Williams' vehicle was a steel ammo box on the passenger floor board, containing 400 ammunition cartridges, an extended pistol magazine inside the center console, 44 ammunition cartridges in the center console, and additional ammunition inside a steel ammunition can in the center console. Also located inside a bi-fold wallet inside a cup holder in the front of the center console were a business card with Williams' name on it, Williams' social security card, and a blank card with Williams' name on it.

22.     Affiant believes that Williams used his cell phones and electronic devices to facilitate controlled substances and firearms transactions, and evidence of drug and firearms trafficking may likely be stored and recorded on the **Devices**.

23.     Through affiant's training, experience and discussions with other experienced law enforcement officers, affiant is familiar with the ways in which drug and firearms traffickers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

24.     Based upon my training and experience, affiant knows that individuals involved in drug and firearms trafficking frequently use cellular telephones to

8

maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances and firearms. Affiant has also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.

25.    Based on my training and experience, affiant is aware that individuals involved in trafficking firearms and controlled substances often possess multiple cellular devices to compartmentalize their illegal activity and to avoid law enforcement detection.

26.    Based upon my training and experience, affiant believes it is common for crime suspects who possess illegal controlled substances and firearms to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and firearms that they control, possess, buy, and sell; furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

27.    Based upon the facts described above, to include (1) my knowledge of and experience confirming the prolific use of electronic devices to facilitate the possession and trafficking of controlled substances and firearms; (2) Williams was arrested with marijuana and a firearm in the vehicle; (3) Williams stated he was using his phone during the observed drug transaction; (4) marijuana, firearms, and

ammunition were recovered in his residence; and (5) Williams admitted to using marijuana on a daily basis, selling firearms, trading firearms for marijuana, and selling marijuana, there is probable cause to believe that a search of the information contained within the above described **Devices** will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances and firearms.

28. **Devices A**, **B**, and **C** were seized by the Milwaukee Police Department Officers during a traffic stop of Dashavon Williams. **Devices D** and **E** were seized by the Milwaukee Police Department Officers during a search of Dashavon Wiliams' residence, which was conducted pursuant to consent.

29. The **Devices** are currently in storage at 2620 West Wisconsin Avenue, Milwaukee, Wisconsin. In my training and experience, I know that the **Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as it was when the **Devices** first came into the possession of the Milwaukee Police Department.

30. On May 26, 2020, United States Magistrate Judge William E. Duffin authorized a search warrant for **Devices A-E**. The warrant application in support thereof was submitted despite the widespread and unprecedented changes in the workplace, including workplace closures and adjustments to procedural capabilities, caused by the global pandemic.

10

31.     On June 23, 2020, a grand jury sitting in the Eastern District of Wisconsin thereafter indicted Williams in a three-count Indictment, for violations of 18 U.S.C. §§ 922(g)(3), 924(a)(2), and 924(c), and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Subsequently, an arrest warrant was issued in June 2020, for Williams' arrest.

32.     The warrant for the **Devices** has not yet been executed. Immediately following the issuance, the Affiant for the May 26, 2020, warrant experienced medical issues that required a temporary leave from duty and subsequently had scheduled leave. COVID-19-related delays persisted throughout this time period and contributed in part to a delay in presenting the case to a grand jury. Upon the Indictment, the focus of the investigation by Agents and Task Force Officers shifted to locating Williams, who had since ceased contact with law enforcement. Numerous attempts at conducting surveillance and locating Williams at known addresses yielded negative results. During the continued efforts to locate Williams, staff changes within the Federal Bureau of Investigation, as well as in the Milwaukee Police Department, resulted in the transfer or promotion of Agents and Task Force members originally associated with Williams' case.  These changes diminished law enforcement resources and resulted in a restructuring of the Task Force. Additionally, in the latter half of 2020, agency resources were directed to addressing the racial unrest and protests throughout Southereastern Wisconsin. Therefore, the global pandemic, the Task Force changes, and racial unrest delayed efforts to

11

execute the search warrant for the **Devices**. Your affiant is now re-applying for a search warrant to search the **Devices**.

33.     Williams had not made any known attempts to contact law enforcement regarding the **Devices**. There are no known requests from Wiliams for the return of the **Devices**. And, Williams has not followed up with law enforcement after his arrest in March 2021.

## III.     TECHNICAL TERMS

34.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store

12

their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

13

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

14

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

35. Based on my training, experience, and research, I know that the **Devices** have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## IV.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Devices** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Devices** because:

15

i.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

j.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

k.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

l.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

m.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

38.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the

entire medium, that might expose many parts of the **Devices** to human inspection in order to determine whether it is evidence described by the warrant.

39.      *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>**CONCLUSION**</u>

40.      I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Devices** described in Attachment A to seek the items described in Attachment B.

17

# ATTACHMENT A

1.  The property to be searched is described as follows:

    a.  Apple watch, series 3, black in color, hereinafter referred to as "**Device A**";

    b.  Apple iPhone 11, black in color, hereinafter referred to as "**Device B**";

    c.  Sprint, Kyocera, model E4233, cell phone, serial number V65E4233, hereinafter referred to as "**Device C**";

    d.  Sprint, Duramax, flip phone, black in color, hereinafter referred to as "**Device D**"; and

    e.  A black in color tablet, hereinafter referred to as "**Device E**."

2.  **Devices A**, **B**, **C**, **D**, and **E**, collectively the "**Devices**," are currently located at 2620 West Wisconsin Avenue, Milwaukee, Wisconsin.

This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.      All records on the **Devices** described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(a)(1), 922(g)(3), 924(a), 924(c); and Title 21, United States Code, Section 841(a)(1), and involve Dashavon Williams, including, but not limited to:

      a.  lists of customers and related identifying information;

      b.  types, amounts, and prices of firearms and drugs trafficked as well as dates, places, and amounts of specific transactions;

      c.  any information related to sources of firearms and drugs and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

      d.  any information recording schedule or travel;

      e.  all bank records, checks, credit card bills, account information, and other financial records;

      f.  Photographs and/or videos depicting possesson of drugs or firearms;

      g.  Any evidence related to either the ownership, purchase, or possession of drugs or firearms; and

      h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.